# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BILLY P. SAMIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-335-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Billy P. Samis requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on January 18, 1962, and was forty-nine years old at the administrative hearing (Tr. 23, 116). He has a twelfth grade education and has worked as a lumber mill laborer, furniture assembler/installer, and kitchen helper (Tr. 25-26, 136). The claimant alleges he has been unable to work since November 28, 2008 due to neck, back, shoulder and hip pain, headaches, and high blood pressure (Tr. 135).

## Procedural History

On August 10, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 with a protective filing date of July 22, 2010. His applications were denied initially on November 18, 2010 and on reconsideration on March 30, 2011 (Tr. 54, 62). ALJ Osly Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated February 8, 2012 (Tr. 8-19). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal (Tr. 1-4). *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work, *i.e.*, he can lift/carry up to ten pounds and can occasionally lift/carry up to 20 pounds; can

stand/walk for up to six hours in an eight hour workday and can sit for up to six hours in an eight hour workday; can only occasionally stoop, crawl, kneel, balance and climb stairs. He cannot climb ladders. He can only frequently reach in all directions with his right arm while he heals from recent shoulder surgery (Tr. 14). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there were jobs that he could perform, *i. e.*, bottling line attendant (Tr. 18).

## Review

The claimant contends that the ALJ: (i) did not properly address claimant's obesity when forming his RFC and (ii) failed to evaluate the medical evidence properly. The Court agrees with the claimant's second contention and the decision of the Commissioner should therefore be reversed.

The ALJ found that that the claimant had the severe impairments of disorders of the back, osteoarthritis and status post right shoulder replacement (Tr. 13). The relevant medical records reveal the claimant sought treatment on October 12, 2008 at the Choctaw Memorial Hospital Emergency Room after he was involved in an ATV accident (Tr. 264). A CT scan of the claimant's thorax showed multiple left rib fractures and left lower lobe atelectasis (Tr. 264). X-rays of his femur and pelvis showed no abnormalities (Tr. 268, 269).

The medical records further reveal that the claimant sought treatment at the Choctaw Nation Indian Health Center in Hugo on December 4, 2008 after a fall injury. He was placed in a cervical collar and referred to the Choctaw Nation Health Care Center

Emergency Room for a complete evaluation (Tr. 224). A CT scan taken of his cervical spine that day showed acute fractures with minimally displaced fragments involving the superior and inferior articular facets at C2-3 on the right, normal alignment, spondylosis resulting in significant left foraminal stenosis at C3-4 and mild left greater than right foraminal stenosis at C6-7 (Tr. 262-263). The claimant was referred to Dr. David Fell for an evaluation (Tr. 215, 254). On January 12, 2009, Dr. Fell reviewed the CT scan taken on December 4, 2008 and agreed that there was small, minimally displaced fractures involving the right C2-3 facet joint. In addition, he noted there was an anterior osteophyte extending from the inferior margin of C3, which was fractured. Dr. Fell also noted marked degenerative disc disease at C3-4, C6-7 and C7-T1 (Tr. 216-217). Dr. Fell recommended an MRI scan of claimant's cervical spine. A January 21, 2009 CT scan showed significant degenerative disc disease at the C3-4 level, particularly to the right with posterior disc osteophyte complex. Broad annular changes were noted with thecal sac effacement to be present at C4-5 level and C5-6 level and an MRI was recommended (Tr. 287-88). A February 10, 2009 MRI showed no definite fracture, but found a 3 mm midline disc bulge at C2-3; a 3mm midline disc bulge, severe left neural foraminal narrowing due to bony spurring, facet osteoarthritis and moderate disc height loss at C3-4; a 3mm disc bulge, mild bilateral neural foraminal narrowing and endplate spurring at C4-5; a 3mm disc bulge, endplate spurring, and mild bilateral neural foraminal narrowing at C5-6; a 3mm disc bulge, moderate bilateral neural foraminal narrowing, endplate spurring and mild disc height loss at C6-7; C7-T1 were intact (Tr. 219-220).

The claimant returned to Dr. Fell on May 13, 2010 and reported that he never stopped having neck pain and had developed blurred vision due to the intensity of the pain. Dr. Fell recommended a cervical spine series with flexion and extension laterals and a CT scan of C1-T1 (Tr. 307-08). A CT scan on June 1, 2010 showed a stable cervical spine, but noted degenerative changes (Tr. 309-10). Dr. Fell recommended a posterior fusion of C3-C4 and removal of the small pieces of loose bone at C2-C3 on July 19, 2010 (Tr. 305).

The medical evidence further reveals William Cooper, D.O. conducted a physical consultative exam on October 8, 2010 (Tr. 311-19). He noted the claimant's chief complaints were chronic neck pain, headaches, low back pain, shoulder pain, hip pain and high blood pressure (Tr. 311). He also noted that the claimant had pain with the range of motion testing; his back and neck were bilaterally tender to palpation; the cervical spine was non-tender with full range of motion; and the lumbar-sacral spine was non-tender with full range of motion. There was no scoliosis, increased kyphosis, or increased lordosis. The claimant's straight leg raising reflex was negative bilaterally in both sitting and supine positions (Tr. 313). He assessed the claimant with history of chronic neck pain, frequent headaches, chronic low back pain, osteoarthritis of the shoulders, left hip strain, and hypertension (Tr. 313).

On October 27, 2010 the claimant presented to the Choctaw Nation Health Care Center Emergency Room after a fall injury. He was diagnosed with a right ankle sprain and a right shoulder contusion (Tr. 320-22). An x-ray of the claimant's right shoulder revealed moderate degenerative joint disease in the glenohumeral and acromioclavicular

joint and a remote fracture of the humeral head (Tr. 361). An x-ray of the claimant's ankle revealed mild degenerative joint disease and plantar calcaneal entheophyte (Tr. 363).

The medical evidence further reveals Terry Kilgore, M.D. conducted a physical consultative exam on February 16, 2011 (Tr. 367-71). He noted the claimant's chief complaint was neck and shoulder pain. The cervical exam revealed no JVD, adenopathy or goiter. Flexion was 35 degrees, extension 5 degrees and lateral rotation was 35 degrees. The back exam revealed no severe spasms or tenderness, flexion was 50 degrees. The extremity exam revealed claimant's hands, wrists, elbows, and left shoulder were normal. Claimant had mild decreased range of motion in the right shoulder and had numerous scars involving his upper extremities (Tr. 373). Dr. Kilgore noted that the claimant was able to get in and out of a chair, and of an off an exam table without help or assistance (Tr. 372). Dr. Kilgore's impression was a cervical injury in 2008 with fractures of the right C2 and C3 articular facets; degenerative disc disease cervical spine C3-C4; chronic cervical pain; chronic right shoulder pain; hypertension, essential; history of hepatitis C; history of alcohol usage (Tr. 373).

On March 16, 2011 the claimant sought treatment at the Choctaw Nation Indian Health Care Center in Talihina after hitting his head on a vehicle's windshield (Tr. 483, 500). A MRI of the claimant's right shoulder conducted on March 23, 2011 revealed moderate to severe glenohumeral joint degenerative joint disease with posterior subluxation, osteophytosis and articular cartilage erosion with poor definition of the labrum; interstitial tear of the infraspinatus tendon; hypertrophic osteoarthropathy of the

acromioclavicular joint; and subscapular bursitis (Tr. 498). The claimant consulted with Dr. Steve Smith on May 4, 2011 who recommended a total shoulder replacement (Tr. 480). The claimant underwent surgery for a total shoulder replacement at St. Edward Mercy Medical Center on June 20, 2011 (Tr. 508-510). The orthopedic discharge summary indicates the claimant's procedure was uncomplicated; that he tolerated the procedure well; that he progressed very well throughout the remainder of his hospital stay; and that his discharge condition was good (Tr. 503).

Dr. Kelly Derrick completed a "Medical Source Statement" on October 18, 2011 (Tr. 383-84). He indicated that the claimant could frequently lift and/or carry 25 pounds, could occasionally lift and/or carry 25 pounds; could stand and/or walk less than 2 hours out of an 8 hour workday; could stand and/or walk with usual breaks continuously for 10 minutes; could sit in a typical 8 hour workday with usual breaks for a total of less than 6 hours; could sit with usual breaks continuously for 30 minutes; would be required to lie down during the normal workday to manage pain; could push and/or pull less than 25 pounds of force total; could never climb, balance or crawl; could occasionally stoop, kneel, crouch, reach, handle, finger or feel (Tr. 383-84). He noted that the claimant had nerve root compression resulting in bilateral radiculopathy of the upper extremities, including paresthesia. He also noted that the claimant's current medical conditions would require a significant number of days off work for medical appointments and procedures (Tr. 384).

At the administrative hearing, the claimant testified that in addition to the chronic neck pain, headaches, back problems, problems with his shoulder and hip, high blood

pressure, blurred vision, hepatitis C, and weight problems that he has numbness in his right leg (Tr. 27). He stated that he has constant pain and numbness in his right shoulder going down his right arm and triceps area, and in the back of his forearm. (Tr. 29). He stated that he cannot use his arm to reach overhead (Tr. 29). He has physical therapy once a week and indicated a pinched nerve in his neck causes the numbness in his arm (Tr. 29-30). He has constant pain in his neck and he experiences numbness in his neck when he stands up over a period of time and when he walks (Tr. 30). Additionally, he testified that he gets headaches that affect his vision when he walks, stands up, or turns his head (Tr. 31). His right leg also goes numb when he stands up for a period of time (Tr. 33). He stated that his current orthopedic Dr. is Dr. Derrick (Tr. 34). His pain in the neck, shoulder, and leg prevent him from sleeping more than 4-5 hours per night (Tr. 35). He testified that a typical day includes cooking, feeding his dog, walking a little bit but half of his day is spent lying on the couch to keep his back straight which helps settle the muscle spasms (Tr. 36).

In his written opinion, the ALJ summarized the claimant's hearing testimony and the medical evidence. In discussing the medical evidence, the ALJ thoroughly summarized Dr. Kelly Derrick's Medical Source Statement and found that Dr. Derrick was not a treating source whose opinion was potentially entitled to controlling weight nor was his opinion evidence otherwise given substantial weight. The ALJ also found that Dr. Derrick's opinion was inconsistent with the remainder of the medical evidence of record. He then found the claimant not credible and determined that the claimant did not

have an impairment, singly or in combination, of such severity as to preclude the performance of light work as set forth in the RFC.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ provided a thorough summary of Dr. Derrick's assessment, but provided no analysis at all in relation to the pertinent factors. Additionally, he stated Dr. Derrick's assessment was inconsistent with the record as a whole, but made no indication of how it was inconsistent and ignored evidence from Dr. Derrick that supported his ultimate assessment. *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion,

taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin*, 365 F.3d at 1219 (10th Cir. 2004). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'").

Because the ALJ failed to properly evaluate the opinion of Dr. Derrick, the decision of the Commissioner should be reversed and the case remanded for further analysis of all of the claimant's impairments and of the medical evidence by the ALJ. If this results in adjustments to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 30th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**